LADIES' BENEVOLENT SOCIETY No. 2, of Edgefield, *vs.* BENEVOLENT SOCIETY No. 2, of Edgefield.

## April Term, 1874.

LEGISLATIVE TRANSFER OF PROPERTY.—A transfer of property from an unincorporated association to a corporation composed of the same members may be worked by legislative enactment, accepted, sanctioned, and given effect to by the parties between whom the transfer is made.

INJUNCTION—MOTION TO DISSOLVE UPON ANSWER.—An injunction will not be dissolved upon an answer which, while denying the equity of the bill in terms, leaves it in doubt how much of the answer is fact, and how much opinion.

INJUNCTION TO INHIBIT THE RESTRAINT OF EXISTING USER—MOTION TO DISSOLVE.—An injunction restraining the defendant from preventing the complainant from using a cemetery upon the same terms and in the same manner as it had been in the habit of doing, will not be dissolved upon an answer which admits that the persons constituting the complainant corporation did contribute to the purchase of the cemetery, any damages arising from such user being capable of pecuniary compensation, and covered by the injunction bond.

*G. B. Guild*, for complainant.

*G. W. Stubblefield*, for defendant.

THE CHANCELLOR :—The bill alleges that complainant was incorporated by order of this court at its May term, 1874, the defendant being also a corporation, created by act of the general assembly. That the objects of the two societies are the same, both being created to aid the destitute and needy of their race, to administer to the sick, and bury the dead. That the Ladies' Benevolent Society No. 2 (the complainant society) was organized in 1867, and is composed of the female portion of the colored population of Edgefield, and, since its creation, has held its meetings, regularly elected its officers, collected means, and appropriated them towards the

·objects for which it was founded. That the defendant .society is composed of the male portion of the colored population, and was organized probably six months before complainant's society. That the two societies have always been regarded as two separate and distinct organizations, while their objects were the same; they have had a different set of officers, and have each managed their own affairs as they saw proper, separately and distinctly from each other. That their meetings were held at different places for about four years, when a proposition was made by defendant to complainant, in order to save expense, to hold their meetings in the same room, though at different hours, which was accepted by complainant. That they have since met in the same room, but continued to keep their separate organization, having separate president, secretary, and treasurer, with their funds separate and distinct. That shortly after this arrangement a proposition was made by defendant to complainant to buy a suitable lot of ground for a cemetery, to be paid for by each society equally, and each to have equal privileges in the same as a burying-ground, the deed to be made to them jointly, which proposition was agreed to. That they bought the land mentioned in the bill, accordingly, for $1,030.87, the one-half of which was paid out of the treasury of complainant's society, the defendant paying the other half. That they made improvements at an expense of $261 on said land, the one-half of which was borne by complainant. That the deed to said land was made to defendant, when it should have been to the two societies. That the arrangement worked well until recently, when the president of defendant proposed to complainant that they should give up their organization and come in with them, and that the two societies should have one treasury and a common fund. Complainant being unwilling to do this, said president of defendant became incensed, and declared that they should have no interest in the joint property. That it was this fact which induced complainant to apply for and obtain its charter of incorporation. That defendant locked the

gate to said cemetery, and refuse to permit complainant to bury their dead therein. The prayer of this bill is that the deed to said cemetery ground be reformed, that a resulting trust be declared in favor of complainant, etc. There was a prayer, also, for an injunction to enjoin the defendant from interfering with the complainant's right of burying their dead in said cemetery. The injunction was to enjoin the defendant "from interfering with the lawful use, by the complainants, of the cemetery in controversy, as they have heretofore been in the habit of doing."

The substance of this bill is that there were two societies in Edgefield organized for the same benevolent purposes, one composed of the colored female population, the other of colored males; that they were entirely separate except in object, having different president, secretary, and treasurer, and meeting, latterly, in the same room, but at different hours, for the sake of economy. That they bought the cemetery in dispute in common, each society paying one-half of the purchase money. That the title was, by agreement, to be taken to both societies, but was taken to the defendant alone. That the society composed of colored females has recently been incorporated, under the name of the Ladies' Benevolent Society No. 2, of Edgefield, and, in its corporate capacity, now comes into this court for the relief prayed.

In this view it is clear that the first ground of demurrer is not well taken. That ground is that the whole bill amounts to this : That certain members seceded from a corporation, formed a new one, and, as such, seek to have an interest in the property of the old corporation. See *Smith* v. *Smith*, 3 Desau. 557. This may be the fact, but it is certainly not the case made by the bill.

The second ground of demurrer is that the bill does not show how a trust in the property could result to complainant, the complainant being a corporation created since the property was bought and paid for, and not showing any sale or conveyance by the individual members of their interests in the property, before incorporation, to the corporation. It is

true that the bill does not show any sale or conveyance, nor does it distinctly aver that the rights of the individual members are vested in the corporation. But it takes for granted, throughout, that the individual members of the female society are the members of the new corporation, and their rights its rights. It does, moreover, distinctly aver that said society applied for and obtained the new charter of incorporation in view of the denial to the society of its rights in the cemetery property. The draftsman of the bill has invariably treated the old society, its members, and the new corporation as one and the same. Whatever may be the actual fact, the bill treats the old society and all its members as merged in the corporation. That this may be done so as to clothe the corporation with the rights of action, at any rate in equity, of the preëxisting body, is decided in *Miller* v. *Lancaster*, 5 Coldw. 514. That case decides that "a transfer of property between parties may well be worked by legislative enactment, accepted, sanctioned, and given effect to by the parties between whom the transfer is made." "This doctrine," says the learned judge who delivered the opinion in that case, "may be startling to the common-law lawyer, whose modes of thought in regard to pleading and practice are one or two centuries old. But it seems proper to mould and shape the mode of proceeding to enforce rights to the novel and changing modes of business and relations of parties that are constantly arising out of the growth and progress of commerce, art, science, and civilization generally." And the learned judge might have added the recent amendments of the Constitution of the United States, in particular.

Of course I am compelled to yield any old-fashioned common-law notions I may have had on this subject, and must overrule the demurrer, even if I doubted, as I certainly do not, the correctness of the ruling.

The defendant has also moved to dissolve the injunction granted at the filing of the bill, upon the ground that its equity is fully met by the answer. The answer says that

the defendant was organized under a charter from the mother society, and a body of ladies were united together for the purpose of assisting each other, without any charter, and some five years since " united with respondents, under their charter (it being read to them at the time), and have been working under their jurisdiction from that time to the filing of complainants' bill," and " said ladies still remain a part of respondents' members." The answer admits that the ladies did have what they call a president, secretary, and treasurer, " so they might collect their dues of ladies, pay out to the sick, and act as regular officers," but to report their actings and doings to respondent. The answer positively denies the separate existence of complainant at the time of the purchase of the cemetery, and insists the purchase was exclusively made by defendant. It admits that complainant, as individuals, paid their dues as other members, and says that the land was bought with the funds of the society, " and since the purchase the complainants have, as they say, formed another society, and obtained a charter in May, 1874." In fine, the answer, while admitting the original organization of the colored females of Edgefield as a separate society, and that they did, as such, after the junction claimed to have been made with defendant, have a president, secretary, and treasurer of their own, does deny that they constituted a separate and distinct organization from defendant, or that any such contract in relation to the cemetery was ever made as charged. It insists that the cemetery was bought with the funds of defendant, and that the members of complainant are seceders from defendant, and, as such, not entitled to any part of the said property, or any right to the use of the same, as set up in the bill.

The difficulty in the case is to know how much of the answer is fact and how much opinion. The female society is admitted to have once had a separate existence, being, to use the words of the answer, " united together for the purpose of assisting each other, without any charter," and that they continued to have a president, secretary, and treasurer of

6

their own.   The answer neither admits nor denies, unless by implication, the positive allegations of the bill—that the societies used the same room, to save expenses, but held their meetings separately and at different hours.   It may be that the defendant thought, and can therefore honestly assert, that the females constituting that society, and now the complainant corporation, were members of its body, and not a separate organization.   And, on the other hand, said females may have considered themselves as a separate organization.   I cannot say that the equity of the bill is so clearly met as to justify the dismissal of the bill, even upon full proof of the facts alleged; for other facts averred in the bill, and not positively denied, might be shown to be true which might neutralize the facts stated in the answer.

Besides, the answer concedes that the persons constituting the new corporation did contribute to the purchase of the cemetery, and no great wrong can be done by allowing these persons to continue to have the use of the cemetery, upon the same terms and in the same manner as heretofore, until the cause can be heard on the merits, especially as any damages sustained are clearly capable of pecuniary compensation, and covered by the injunction bond.   The motion to dissolve will be overruled.